THE STOCK QUOTATION TELEGRAPH COMPANY, Plaintiff, *v.* NICHOLAS J. HAYES as Commissioner of Water Supply, Gas and Electricity, and Others, Defendants.

Supreme Court, New York Special Term, April, 1923.

**Telegraphs and telephones — news tickers — right of company to place wires in streets of New York city — municipal consent unnecessary — contract permitting use of streets — suit by company to rescind contract because of duress, sustained — when no waiver of rights prior to contract — validity of original franchise declared — equity.**

Plaintiff was incorporated in 1882 under the " Telegraph Act " (Laws of 1848, chap. 265) and the acts amendatory thereof and supplemental thereto. Its business is to send out news by tickers electrically operated affecting world affairs, sporting events and similar activities. For nearly ten years its wires which spanned various streets in the city of New York were carried overhead on poles and over housetops until by direction of the city the wires were placed underground. *Held*, that under the decision in *Holmes Electrical Protective Co.* v. *Williams*, 228 N. Y. 407, the plaintiff was a telegraph company and a " secondary franchise " from the city was not necessary in order that plaintiff might carry on its business.

In January, 1912, upon the opinion of the corporation counsel that the plaintiff was operating in the streets of the city either without or under no greater authority than a permit or license revocable at will, the board of estimate and apportionment adopted a resolution requiring plaintiff, if it desired to continue business, to petition said board for a franchise on or before a certain date. Accordingly, plaintiff filed a petition by which without waiving its legal rights and without admitting any legal obligation on its part to require the consent of the city to the use of the streets, plaintiff sought the consent and approval of said board to the continuance of its business and the continued use and occupation of the streets for the maintenance and operation of its system of wires and cables. The saving clauses in said petition and in a contract subsequently entered into between plaintiff and the city showed the intention of the parties was that the court should pass upon the question of the validity of the contract without prejudice to any rights which plaintiff might have theretofore acquired, if any, to operate a telephone, telegraph or ticker business. Plaintiff's attitude toward entering into the contract was shown by various protests made during the negotiations leading up to its execution. In a suit in equity to establish plaintiff's franchise, to restrain any interference with the enjoyment or operation thereof, to require the city authorities to grant necessary street permits and to

have set aside and declared null and void said contract between the city and plaintiff, *held*, that said contract was void, but if plaintiff had received any substantial rights or privileges thereunder greater than were granted by its original franchise the city might by proper action or proceeding protect its rights.

The plaintiff having been given its choice by the city to either enter into said contract or discontinue its business the contract was not voluntarily made and plaintiff was entitled to judgment for moneys paid by it to the city as a result of the contract but without interest in view of the waiver and release contained in a provision of the contract.

The recovery of said moneys and the return of the bonds deposited by plaintiff being merely incidental to the main object of the action, section 261 of the Greater New York charter did not apply.

SUIT in equity to establish validity of a franchise.

*O'Brien, Boardman, Parker & Fox (Morgan J. O'Brien* and *Morgan J. O'Brien, Jr.,* of counsel), for plaintiff.

*John P. O'Brien,* corporation counsel (*Vincent Victory,* of counsel), for defendants.

MARTIN, FRANCIS, J.  This is a suit in equity to establish the validity of plaintiff's franchise, to restrain the city, the board of estimate and apportionment and the commissioner of water supply, gas and electricity from interfering with the enjoyment or operation of its franchise, to require the city authorities to grant necessary street permits, to set aside and declare null and void a contract between the city and plaintiff dated May 8, 1913; that certain bonds deposited under that contract be returned to plaintiff; that plaintiff recover from the city the sum paid by plaintiff under the contract amounting to $66,290.75, with interest, and to enjoin the defendant Empire Subway Company from refusing plaintiff such space in its subways as may be necessary to carry on its business.  Plaintiff was incorporated in 1882 under the " Telegraph Act," being chapter 265 of the Laws of 1848 of this state, and the acts amendatory thereof and supplemental thereto.  Its business since its incorporation has been sending out news affecting world affairs, sporting events and similar activities, by means of tickers electrically operated.  The messages are sent from its office by an operator striking the letters of the alphabet and numbers which are conveyed by means of electric wires to the various places where tickers are located, and the messages thus sent out are recorded on tape on the tickers exactly as sent from the main office.  Prior to 1891 plaintiff's wires were carried overhead on poles in the streets and over housetops, and the wires spanned various streets in the city.  Thereafter, under direction of the city, the wires were placed underground.  On January 18, 1912, the board of estimate and apportionment adopted the following resolution:

" WHEREAS the corporation counsel has by an opinion presented to the board this day advised that the Holmes Electrical Protective Company (of New York), the Stock Quotation Telegraph Company and the Frederick Pearce Company are either operating in the streets of the city without authority or under authority no greater than a permit or license revocable at will; now, therefore, be it resolved that the above-named companies if they desire to continue the business in which they are now engaged be and they are hereby required to present verified petitions for franchises to this board by properly incorporated companies on or before Friday, February 16, 1912, and be it further resolved that each of the said companies and all of them be and they are hereby directed to notify this board on or before Saturday, January 27, whether they will comply with the foregoing resolution, and be it further resolved that the secretary of the board be and he is hereby directed to serve a copy of this resolution upon each of the above-named companies."

On February 6, 1912, the plaintiff, through its counsel, filed a petition with the board, which recited the incorporation of the company under the " Telegraph Act " of 1848 and that, " without waiving its legal rights and without admitting any legal obligation on its part to require the consent of the City of New York to the use of its streets," plaintiff sought the consent and approval of the board for the continuance of its business and the continued use and occupation of the streets for the maintenance and operation of its system of wires and cables. In pursuance of the above resolution on May 8, 1913, a contract was entered into between the city and plaintiff, which contained the following clauses: " Section 3. It is understood that this contract is made without prejudice to any rights which the company may have heretofore acquired, if any, to operate a telephone, telegraph or ticker business. However, the company shall not exercise any right or privilege other than that herein authorized and recognized, and in accordance with the terms of this contract, except after final judicial determination in an action to which the city is made a party. Sec. 5. The company promises, covenants and agrees on its part and behalf to conform to and abide by and perform all the terms, conditions and requirements in this contract fixed and contained unless and until, in an action brought or conducted as hereinbefore provided, the courts shall finally determine that the company had heretofore acquired the right to carry on its business as now conducted without the necessity of obtaining this franchise or consent from the city. The company further promises, covenants and agrees that in the event of a decision in its favor in any action brought, as provided in section 3, it will not claim or attempt to claim or demand any

damage, penalty or recompense from the City of New York for any expense, expenditures, suits or other disadvantage incurred by it because of the entering into this contract with the City of New York, and hereby expressly waives and surrenders to the city any such claim or demand." Plaintiff relies upon the decision in the case of *Holmes Electrical Protective Co.* v. *Williams,* 228 N. Y. 407. The Holmes Company was incorporated under the same statute as plaintiff. The court in that case held that the business carried on by the Holmes Company was that of a telegraph company. At pages 414 and 415 the court said: " This system involved the connecting of premises to be protected with a signal station by means of electrical wires, which would register an alarm at the central office when interfered with. These wires were run over housetops and over and along private property and across the public streets. As an incident to this system watchmen were employed to patrol and inspect the protected premises and the apparatus connected therewith. The basis of the system was the electrical telegraph. A message was sent from the house, unlawfully opened, to a central office notifying it of the fact. A mere signal was registered by electricity, but this signal was interpreted to mean that a door or window was opened without authority. All telegraph messages are but electric signals having well-understood meanings. A burglar telegraphed his entrance. He sent his message over a wire. That his act was involuntary and unconscious made it none the less a telegraph message. * * * The protected premises are so arranged that if entry be made therein a telegraph message is recorded by the central station. In case of an authorized entry a code telegraph signal is used so that the central office is advised that the person entering the premises is not an intruder, but in the absence of such code signal the company assumes that every such message is caused by an intruder. The company maintains watchmen who reply to such signals and render special services." The court also held that the contract or consent of the city, referred to as a " secondary franchise," was not necessary in order to carry on the business. In view of the decision in the *Holmes* case, that the business carried on by it was that of a telegraph company, there can be no question, in my opinion, but that plaintiff is a telegraph company. Therefore, a " secondary franchise " from the city was not necessary in this case. The contract of May 8, 1912, was not voluntarily entered into. Plaintiff was given a choice by the city to enter into the contract or discontinue its business. The saving clauses in the petition and contract clearly show that it was intended that the courts should pass upon the validity of the contract, and that **it**

was without prejudice to plaintiff's rights. Plaintiff's attitude toward entering into the contract is also shown by the various protests made dur'ng the negotiations leading up to its execution. There is no doubt but that if this "secondary franchise," so called, was not obtained plaintiff's business would have been seriously injured or destroyed. In the *Holmes* case the "secondary franchise" contained a clause that the same was without prejudice to any of its rights. The contract in this case contains a similar clause. Plaintiff was not guilty of laches in not bringing this action at an earlier date. It intervened in the *Holmes* case and was apparently awaiting a decision in that case before commen ing this action. Any rights granted to plaintiff by the contract greater than it had under the original franchise were merely incidental and not the main object of the city in forcing plaintiff to enter into the contract. In the *Holmes* case the contract gave to the company rights it did not have under its original franchise, yet the Court of Appeals held, in effect, that the company's contract or so-called "secondary franchise" was void. If plaintiff has received any substantial rights or privileges under the contract greater than granted by its original franchise, the city may by a proper action or proceeding protect its rights. The moneys paid to the city under the contract were not voluntarily paid, but were paid as the result of a contract forced upon plaintiff by the city. This is true also of the bonds deposited by plaintiff. Section 261 of the Greater New York charter does not apply, inasmuch as this is an equitable action and the recovery of the moneys and return of the bonds is incidental. Plaintiff is not entitled to interest on the moneys paid, in view of the waiver and release contained in section 5 of the contract. Judgment for plaintiff as above indicated. Requests to find passed upon. Submit decision and judgment.

Judgment accordingly.